No. 25-2347

---

## UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

---

**Mike Huckabee**
*Plaintiff-Appellant*

**v.**

**Meta Platforms, Inc.**
*Defendant-Appellee*

---

Appeal from the U.S. District Court for the District of Delaware
No. 24-cv-773-GBW, Judge Gregory B. Williams

---

## APPELLANT'S OPENING BRIEF

---

**BELLEW, LLC**

Sean J. Bellew, Delaware Bar No. 4072
sjbellew@bellewllc.com
2961 Centerville Rd., Ste. 302
Wilmington, DE 19808
(302) 252-4951

**POYNTER LAW GROUP, PLLC**

Scott Poynter, Ark. Bar 90077*
scott@poynterlawgroup.com
4924 Kavanaugh Blvd.
Little Rock, AR 72207
(501) 812-3943
*Pro hac vice forthcoming*

*Counsel for Plaintiff-Appellant Mike Huckabee*

## TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ................................................................1

STATEMENT OF ISSUES...........................................................................1

STATEMENT OF RELATED CASES AND PROCEEDINGS ......................2

CONCISE STATEMENT OF THE CASE.......................................................2

SUMMARY OF ARGUMENT.......................................................................5

ARGUMENT................................................................................................6

I. DID THE DISTRICT COURT WRONGLY INTERPRET A SCIENTER
REQUIREMENT IN ARKANSAS' FRANK BROYLES PUBLICITY PROTECTION ACT,
LEADING TO THE ERRONEOUS DISMISSAL OF HUCKABEE'S COMPLAINT WITH
PREJUDICE AND DENIAL OF HIS MOTION TO AMEND JUDGMENT? .....................6

A. Pleadings must be read in a plaintiff's favor under Rule 12(b)(6). .....7

B. Motions for leave to amend a complaint should be freely given.........8

1. The Frank Broyles Publicity Protection Act does not require
scienter, and the District Court committed an error of law by
requiring it. ........................................................................................9

CONCLUSION ........................................................................................25

# TABLE OF CITATIONS

## CASES

*Adams v. Gould Inc.*, 739 F.2d 858 (3d Cir. 1984)----------------------------------11

*Alvin v. Suzuki*, 227 F.3d 107 (3d Cir. 2000)-------------------------------------11

*Anderson v. TikTok, Inc.*, 116 F.4th 180 (3d Cir. 2024)-----------------------------15

*Anjelino v. New York Times Co.*, 200 F.3d 73 (3d Cir. 1999) ----------------------25

*Bagic v. Univ. of Pittsburgh*, 773 Fed.Appx. 84 (3d Cir. 2019) -------------- 25, 26

*Ballentine v. U.S.*, 486 F.3d 806 (3d Cir. 2007) -------------------------------- 9

*Banister v. Davis*, 590 U.S. 504 (2020) ------------------------------------------- 4

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ----------------------10, 11, 27

*Cortes v. BJ's Wholesale Club*, 843 Fed.Appx. 463 (3d Cir. 2021) ----------------16

*Delaware Cnty., Pa. v. Fed. Hous. Fin. Agency*, 747 F.3d 215 (3d Cir. 2014) ---- 9

*Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247 (3d Cir. 2007)-------------------------------------------------------------------------7, 10

*Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764 (3d Cir. 2013) 11

*Hepp v. Facebook*, 14 F.4th 204 (3d Cir. 2021)-------------------------------------15

*In re Genesis Health Ventures, Inc.*, 355 B.R. 438 (Bankr. D. Del. 2006) --------16

*In re Maiden Holdings, Ltd. Securities Litigation*, --- F.4th ----, 2025 WL 2406864 (3d Cir. 2025)------------------------------------------------------------ 8

*Joel E. Cape PLC v. Cape Law PC*, 757 F.Supp.3d 846 (W.D. Ark. 2024) ----8, 14

*Martinez v. UPMC Susquehanna*, 986 F.3d 261 (3d Cir. 2021) -------------------- 4

*Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669 (3d Cir. 1999)------------------------------------------------------------------------------ 9

*OFI Asset Mgmt. v. Cooper Tire & Rubber*, 834 F.3d 481 (3d Cir. 2016) --------16

*Phillips v. Cnty. of Allegheny*, 515 F.3d 224 (3d Cir. 2008) ---------- 10, 17, 19, 26

*Scheuer v. Rhodes*, 416 U.S. 232 (1974) -------------------------------------------25

*Shopman's Loc. Union 502 Pension Fund v. Samuel Grossi & Sons, Inc.*, 578 F.Supp.3d 698 (3d Cir. 2022) --------------------------------------------------------11

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308 (2007) -------------------- 8

*U.S. ex rel. Ascolese v. Shoemaker Constr. Co.*, 55 F.4th 188 (3d Cir. 2022)------ 9

*U.S. v. Jones*, 471 F.3d 478 (3d Cir. 2006) -----------------------------------------18

## STATUTES

Ark. Code Ann. § 4-75-1102--------------------------------------------------- 11, 12

Ark. Code Ann. § 4-75-1108-----------------------------------------------14, 19, 26

Ark. Code Ann. § 4-75-1110(a)(1)(F) ---------------------------------------15, 19, 20

Ark. Code Ann. § 4-75-1110(a)(1)(F)(ii) ------------------------------------ passim

Ark. Code Ann. § 4-75-1111-----------------------------------------------------------18

Ark. Code. Ann. § 4-75-1112(1) ---------------------------------------------------11

## OTHER AUTHORITIES

Uche Ewelukwa Ofodile, *The Frank Broyles Publicity Rights Protection Act of 2016: Potential Minefields*, 52-SPG ARK. LAW. 36 (Spring, 2017) ----13, 14, 16

## RULES

Fed. R. Civ. P. 15(a) ----------------------------------------------------------------11

Fed. R. Civ. P. 8(e)-----------------------------------------------------------------10

## JURISDICTIONAL STATEMENT

The Court has appellate jurisdiction under 28 U.S.C. § 1291 over the District Court of Delaware's final order denying Appellant Mike Huckabee's ("Huckabee" or "Appellant") motion to alter or amend judgment, which merges with the granting of Appellee Meta Platforms, Inc.'s ("Meta" or "Appellee") motion to dismiss for failure to state a claim. *See Banister v. Davis*, 590 U.S. 504, 508-09 (2020); *see also Martinez v. UPMC Susquehanna*, 986 F.3d 261, 265 (3d Cir. 2021). The District Court's subject matter jurisdiction was based on 28 U.S.C. § 1332. Huckabee filed his notice of appeal on July 16, 2025.

## STATEMENT OF ISSUES

I. Did the District Court wrongly interpret a scienter requirement into Arkansas' Frank Broyles Publicity Protection Act, leading to the erroneous dismissal of Huckabee's complaint with prejudice and denial of his motion to amend judgment? *See* Joint Appendix ("J.A.") 3, 4, 19, 20, 62, 90, 116, 131, 177, 203.

1

## STATEMENT OF RELATED CASES AND PROCEEDINGS

This case is new to this Court, and Huckabee knows of no related or pending cases before any court or agency, state or federal.

## CONCISE STATEMENT OF THE CASE

Huckabee is a citizen of Arkansas, a Baptist minister, a former governor of Arkansas, a two-time presidential candidate, a New York Times best-selling author, a nationally syndicated radio and television host, and most recently, the United States Ambassador to Israel. J.A.48-49 ¶ 2; J.A.145-46 ¶ 2. Huckabee has spent the adult portion of his 70-year life building his reputation and has developed a large public following. His well-earned reputation as a moral and upstanding leader has allowed him to be in the various positions he has held and currently holds. Meta is one of the most dominant social media and advertising companies in the world, with five billion monthly active users on Facebook and Instagram, and $134 billion dollars in yearly revenue, with ninety-eight percent of that coming from its advertising business. J.A.49 ¶ 7-8.

Appellant filed this action in the United States District Court for the District of Delaware after learning Meta had published advertisements on

Facebook featuring his name, image, and likeness (sometimes, "NIL") without his knowledge and authorization. These advertisements claimed Huckabee would be leaving his nationally broadcasted television show to pursue "[a] greater purpose." J.A.50 ¶ 13. This supposed greater purpose was to endorse and promote cannabinoid (CBD) gummies. J.A.51 ¶ 13. Other advertisements distributed by Meta claimed Huckabee was suffering from health problems but that CBD gummies had miraculously turned his life around. J.A.51 ¶ 14. Some of these advertisements even took Facebook users to a fake Fox News website which purported to show Huckabee endorsing the CBD products. J.A.52 ¶ 16. Meta published these ads without Huckabee's knowledge and permission. Unfortunately, numerous Huckabee fans purchased these CBD products because they believed Huckabee had endorsed them. J.A.54 ¶ 22.

Huckabee's original complaint brought claims under Arkansas law. Specifically, Huckabee pled violations of the Frank Broyles Publicity Protection Act (hereafter, the "Broyles Act") in Count I, Invasion of Privacy – False Light and Appropriation in Count II, Declaratory and Injunctive Relief in Count III, and Unjust Enrichment in Count IV. On November 18,

2024, the District Court granted Meta's Rule 12(b)(6) motion to dismiss and dismissed all Counts in the complaint with prejudice, but dropped a footnote citing this Court's decision in *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007), which instructed Appellant to move to amend the complaint under Fed. R. Civ. P. 59(e) after judgment dismissing the complaint was entered. J.A.18. Huckabee followed this precedent and timely moved to alter or amend the District Court's judgment and provided a redlined version of an amended complaint with additional facts to properly place Meta on notice of the claims asserted against it. But on June 24, 2025, the District Court denied the Motion to Alter or Amend Judgment and Huckabee timely filed his Notice of Appeal.

Here, Huckabee appeals only those parts of the original Order dismissing the complaint with prejudice and the Order denying the Motion to Alter or Amend as they relate to Count I of both the original complaint and the proposed amended complaint for violations of the Broyles Act. Huckabee forgoes appeal of the Orders as to all the remaining Counts in both the original and proposed amended complaint. Accordingly, this appeal

addresses only the Broyles Act and the elements necessary to properly plead violations of it.

## SUMMARY OF ARGUMENT

Huckabee appeals the District Court's decisions because it erroneously read into the Broyles Act an element of scienter which does not exist. This legal term is typically used to show a defendant's guilty knowledge of wrongdoing or intent to deceive. This Court has applied scienter mostly in the context of common law fraud or securities fraud violations and has generally defined it as embracing the "intent to deceive, manipulate, or defraud." *In re Maiden Holdings, Ltd. Securities Litigation*, --- F.4th ----, 2025 WL 2406864, *9 (3d Cir. 2025) (*quoting Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 319 (2007)).

The Broyles Act does not contain any language requiring defendants to have an intent to deceive, manipulate, or defraud. Instead, the Broyles Act addresses whether the individual has given authorization for the commercial use of their name, image, or likeness, as well as whether the defendant was aware or should have been aware that consent had not been provided. *See Joel E. Cape PLC v. Cape Law PC*, 757 F.Supp.3d 846, 851 (W.D.

Ark. 2024) ("This Act creates a statutory cause of action against a person who commercially uses any of these identifying features without authorization.").

## ARGUMENT

**I. Did the District Court wrongly interpret a scienter requirement in Arkansas' Frank Broyles Publicity Protection Act, leading to the erroneous dismissal of Huckabee's complaint with prejudice and denial of his motion to amend judgment?**

### *Standard of Review*

This court reviews *de novo* a district court's granting of a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Ballentine v. U.S.*, 486 F.3d 806, 808 (3d Cir. 2007). This Court generally reviews denials of reconsideration for abuse of discretion, *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 673 (3d Cir. 1999), but where the denial was predicated on an issue of law, it is reviewed *de novo. Id.; see also U.S. ex rel. Ascolese v. Shoemaker Constr. Co.*, 55 F.4th 188, 193 (3d Cir. 2022) ("we review this decision *de novo* when the amendment was denied for legal reasons, such as when the proposed amendment would fail to state a claim."). Here, the District Court read into the Broyles Act an element of scienter, which does not exist in the Arkansas statute, and

therefore, the denial was on an issue of law and should be reviewed *de novo*. *Delaware Cnty., Pa. v. Fed. Hous. Fin. Agency*, 747 F.3d 215, 220-21 (3d Cir. 2014) ("We apply 'a plenary standard of review to issues of statutory interpretation[.]'") (citation omitted).

### A. Pleadings must be read in a plaintiff's favor under Rule 12(b)(6).

In deciding a motion to dismiss, a district court must accept all factual allegations as true and draw all inferences in the light most favorable to plaintiff. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Supreme Court has reaffirmed Fed. R. Civ. P. 8(a) as requiring only a short and plain statement of relief putting the defendant on fair notice of the claim. *Id.* at 231 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007)). What is required of this short and plain statement may change on an individual basis because "[c]ontext matters in notice pleading," *Phillips*, 515 F.3d at 232, and the complaint "must be construed so as to do justice." Fed. R. Civ. P. 8(e). In short, the complaint must allege enough factual matter, taken as true, to suggest the required element of a claim. *Phillips*, 515 F.3d at 234. This does not impose a probability requirement. *Id.* It simply requires enough facts to

7

raise a "reasonable expectation" that discovery will reveal evidence of the claim's elements. *Id.*

**B. Motions for leave to amend a complaint should be freely given.**

In the Third Circuit, leave to amend a complaint within the twenty-eight days prescribed for a motion for reconsideration should "be freely given when justice so requires." *Fletcher-Harlee Corp.*, 482 F.3d at 253 (citing Fed. R. Civ. P. 15(a)). As long as the amendment would not be "futile," *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000), then under the liberal pleading philosophy of Rule 15, an amendment must be allowed if there is no undue delay, bad faith, or prejudice to the defendant. *Adams v. Gould Inc.*, 739 F.2d 858, 867-68 (3d Cir. 1984). An amendment would be futile if it fails to state a claim upon which relief could be granted under the 12(b)(6) standard. *Shopman's Loc. Union 502 Pension Fund v. Samuel Grossi & Sons, Inc.*, 578 F.Supp.3d 698, 703 (3d Cir. 2022). This means a complaint is futile only if the plaintiff would not be entitled to relief "under any 'plausible' reading of the pleadings." *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013) (citing *Twombly*, 550 U.S. at 570).

**1. The Frank Broyles Publicity Protection Act does not require scienter, and the District Court committed an error of law by requiring it.**

The Broyles Act was created to protect the name, image, and likeness rights of Arkansans who have spent their lives developing and maintaining their reputations. Ark. Code Ann. § 4-75-1102. Moreover, the Arkansas legislature specifically expressed the Broyles Act is to be "liberally construed to accomplish its intent and purposes." Ark. Code. Ann. § 4-75-1112(1). Indeed, the Legislature made the following findings and stated its intent in Ark. Code Ann. § 4-75-1102 as follows:

(a) The General Assembly finds that citizens of this state:

(1) Are renowned for their hard work and accomplishments in many areas that contribute to the public health, welfare, and pursuit of happiness;

(2) Often spend most of their lives developing and maintaining reputations of honesty and integrity;

(3) Have a vested interest in maintaining the memory of personal traits that characterize them and their accomplishments; and

(4) Should have the use of their names, voices, signatures, photographs, and likenesses protected for their benefit and the benefit of their families.

(b) It is the intent of the General Assembly by the enactment of this subchapter to:

    (1) Protect the names, voices, signatures, photographs, and likenesses of the citizens of this state from exploitation and unauthorized commercial use without the consent of the citizen;

    (2) Provide a method for the fair administration of the right to use the name, voice, signature, photograph, or likeness of a citizen; and

    (3) Provide appropriate remedies for the exploitation and unauthorized commercial use of the name, voice, signature, photograph, or likeness of a citizen.

In 2016, the Arkansas legislature passed the Broyles Act after the family of Frank Broyles, the long-time University of Arkansas football coach and athletic director, worked with legislators to protect his name, image, and likeness after his death. The Broyles Act is significant because the right of publicity in the United States is essentially a state-based right and there is no federal right of publicity statute. Uche Ewelukwa Ofodile, *The Frank Broyles Publicity Rights Protection Act of 2016: Potential Minefields*, 52-SPG ARK. LAW. 36, 2 (Spring, 2017).[1]

---

[1] Professor Uche Ewelukwa Ofodile is a law professor at the University of Arkansas School of Law in Fayetteville, Arkansas. She is the Co-Chair of the

As Professor Ofodile writes, the Act reaches the unauthorized commercial use of an individual's protected identity without permission. To make a Broyles Act claim, the plaintiff must plead and prove:

- ownership of a valid and protectable right;

- commercial use by a defendant of a living or deceased individual's "readily identifiable" name, voice, signature, photograph, and/or likeness; and

- lack of consent.

Further, Professor Ofodile provides, "[i]ntent is not an element of a right of publicity claim[.]" *Id.*

There is one court opinion determining a Rule 12 motion regarding alleged violations of the Broyles Act. In it, Judge Timothy Brooks of the Western District of Arkansas held the Act "creates a statutory cause of action against a person who commercially uses" an individual's name, voice, signature, photograph, or likeness without authorization. *Joel E. Cape PLC*, 757 F.Supp.3d at 851 (citing Ark. Code Ann. § 4-75-1108). In *Cape*, the

---

Intellectual Property Interest Group of the American Society of International Law.

Western District of Arkansas focused on whether there was proper authorization and commercial use of the name, image, and likeness. Pertinent here, the Western District of Arkansas neither determined nor required facts concerning the District of Delaware's asserted scienter element. *Id.* Indeed, the Western District of Arkansas, unlike the District of Delaware, properly held the heart of the Broyles Act turns on the lack of authorization of the name, image, and likeness, and whether that unauthorized use was for a commercial purpose. *Id.*

Because Meta is "a service provider of a system or network," the plaintiff must plead the defendant had knowledge of the lack of consent or at least should have known of the lack of authorization. *See* Ark. Code Ann. § 4-75-1110(a)(1)(F). Specifically, the statute states, "actual knowledge that a photograph or likeness on the system or network is in violation" of someone's NIL rights, or "[i]n the absence of such actual knowledge, is [] aware of facts or circumstances from which a violation of this subchapter is apparent." *Id.* The District Court's holding turned on this element because it determined the Broyles Act included an element of deceit in holding

12

Huckabee was required to plead Meta acted, "at least, with reckless disregard to [the ads'] truthfulness or accuracy." J.A.31.

The District Court reasoned that this knowledge or constructive knowledge language in the Broyles Act amounted to a scienter requirement. J.A.31; J.A.12. No other Court determining publicity rights cases has ruled similarly. This Court has reviewed a like case involving a television personality in Philadelphia about 4 years ago. In *Hepp v. Facebook*, 14 F.4th 204 (3d Cir. 2021), the Court's initial focus was on Section 230 immunity for Facebook.[2] This Court acknowledged Pennsylvania's statute provided a right of publicity cause of action, like the Broyles Act, which was violated with the misappropriation of Ms. Hepp's likeness rights. Importantly, there was no discussion of the need for scienter to establish the intellectual property claim.

Scienter is defined generally as a "mental state embracing *intent* to deceive, manipulate, or defraud." *In re Genesis Health Ventures, Inc.*, 355 B.R. 438, 458 (Bankr. D. Del. 2006) (citations omitted) (emphasis added); *but see*

---

[2] The District Court rightly determined Meta was not entitled to Section 230 immunity as to Huckabee's claim because the ads were Meta's first-party speech under *Anderson v. TikTok, Inc.*, 116 F.4th 180 (3d Cir. 2024).

Ofodile, at 2 ("*[i]ntent* is not an element of a right of publicity claim in Arkansas.") (emphasis added). Indeed, the scienter element of intent to deceive, manipulate, or defraud is addressed mostly in the context of securities fraud litigation. *See OFI Asset Mgmt. v. Cooper Tire & Rubber*, 834 F.3d 481, 490 (3d Cir. 2016). Obviously, Huckabee is not suing Meta for securities fraud or even common law fraud. The Broyles Act focuses on whether Meta knew, actually or constructively, that Huckabee hadn't given permission to use his name, image, or likeness in commercial advertising, rather than on any intent to deceive or defraud. The Act's language is more analogous to constructive knowledge, not scienter, which exists when a condition lasts "for such a length of time as reasonably to have resulted in knowledge and correction had the defendant been reasonably diligent." *Cortes v. BJ's Wholesale Club*, 843 Fed.Appx. 463, 465 (3d Cir. 2021).

The District Court, by requiring scienter, forced Huckabee to plead an element of falsity and intent to deceive which doesn't exist in the Broyles Act, and moreover, to ostensibly plead the non-existing intent element with particularity under Rule 9(b) of the Federal Rules of Civil Procedure. But the Broyles Act's concern is not whether the ad was false or not, or intentionally

so, but instead whether Meta knew or was aware of facts or circumstances making it apparent Huckabee had not authorized the ads. J.A.210. As such, Rule 8(a) notice pleading applies to claims for violations of the Broyles Act, which "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*, 515 F.3d at 234 (citation omitted).

The original complaint properly pled Meta was not authorized to exploit Huckabee's name, image, and likeness under Rule 8(a). J.A.54 ¶ 23; J.A.55 ¶ 24-26; J.A.56 ¶ 28-30. Further, under Ark. Code Ann. § 4-75-1110(a)(1)(F), the proposed amended complaint sufficiently pled Meta knew or should have known Huckabee had not consented to the ads by providing twenty-two paragraphs and subparagraphs of detailed facts demonstrating Meta knew it published the ads without Huckabee's consent or at least was aware of facts or circumstances making the Broyles Act violation apparent. Indeed, the proposed amendment demonstrated Meta systematically reviews all ads for accuracy, authenticity, and consistency with its policies, and has both automated and manual reviews in place to prohibit "potential privacy violations" and to ensure the ads are "authentic." J.A.155-163.

15

Moreover, the amended complaint went through fourteen instances over a four-year period of Meta abusing public figures and their NIL rights by publishing cannabinoid ads without their consent. J.A.156-163.

Because the Broyles Act is the sole remedy for unauthorized commercial use of name, image, and likeness rights in Arkansas (Ark. Code Ann. § 4-75-1111), its wording governs, and a scienter requirement excluded by the statute does not apply. *U.S. v. Jones*, 471 F.3d 478, 480 (3d Cir. 2006) ("If the 'language of a statute is clear . . . the text of the statute is the end of the matter.'") (citation omitted). Under Arkansas law, Appellant was required to plead knowledge or constructive knowledge that the use of Huckabee's name, image, and likeness was without his consent, and he did so.

The original complaint alleged Meta approved and maintained advertisements (which are Meta's first-party speech), J.A.50 ¶ 10; J.A.54 ¶ 20, 23; exploited Huckabee's name, image, and likeness, J.A.57 ¶ 32, and did so to a commercial benefit, J.A.49 ¶ 8, and thus, satisfied the first three elements of the Broyles Act. Ark. Code Ann. § 4-75-1108. In support of the knowledge requirement, the complaint alleged that Huckabee is a nationally recognized

16

celebrity, J.A.48-49 ¶ 2; J.A.50 ¶ 12, and that for years Meta has been violating the property rights of other celebrities through CBD ads since at least 2021 without their permission. J.A.55 ¶ 24. Because the advertisements were Meta's first-party speech, J.A.10, and reading the complaint in Huckabee's favor, *Phillips*, 515 F.3d at 233, it is clear that Meta knew, or should have known, Ark. Code Ann. § 4-75-1110(a)(1)(F), its ads violated Huckabee's protected property rights because Meta published them without his permission.

Additionally, the District Court erred in denying Huckabee's motion to alter or amend judgment. The proposed amended pleading properly pled that Meta was "aware of facts or circumstances" from which a violation was apparent. Ark. Code Ann. § 4-75-1110(a)(1)(F)(ii). Construed in the light most favorable to plaintiff, *Phillips*, 515 F.3d at 233, the amendment clearly chins the Rule 12 bar. The District Court first addressed allegations about Meta's advertising management. J.A.32-34. Notably, the proposed amendment states, "Meta specifically provides that it will prohibit 'potential privacy violations,' 'unsettling or inaccurate' information, and moreover, bar all ads that are not 'authentic.'" J.A.156 ¶ 38.D. Meta conducts these

reviews through both automated and manual systems. *Id.* Meta "controls every aspect of the production of each ad," J.A.155 ¶ 38.B., and reviewed the violative Huckabee ads for accuracy and authenticity. J.A.156 ¶ 38.E. Yet after conducting this review and knowing it did not have permission to Huckabee's name, image, and likeness, J.A.154 ¶ 35, Meta approved and published the ads anyway. J.A.156 ¶ 38.E. These allegations alone, which are taken directly from Meta's own policies, sufficiently plead Meta violated the Broyles Act because Meta knew it did not have Huckabee's permission to use his name, image, or likeness, or was aware of facts or circumstances from which a violation was apparent. Ark. Code Ann. § 4-75-1110(a)(1)(F).

But the District Court decided these allegations did not allow it to draw the reasonable inference "Meta approved and maintained [the Asserted Advertisements] with actual malice or, at least, with reckless disregard to their truthfulness or accuracy." J.A.31 (the District Court citing to its own motion to dismiss decision at J.A.15 requiring, at least, "serious doubts about the truth" of the ads). This reasoning not only forced an incorrect scienter requirement on Appellant, but it also wrongly demanded a showing "that Meta was required to conduct 'due diligence' on the truth

of the Asserted Advertisements" to infer malice. J.A.15. Such requirements are nowhere within the statutory language of the Broyles Act written and passed by the Arkansas General Assembly.

Moreover, the proposed amendment adequately alleges Meta was aware of its violations or was "aware of facts or circumstances from which a violation" is apparent. Ark. Code Ann. § 4-75-1110(a)(1)(F)(ii). For years, Meta has been wrongfully using other public figures and celebrities to promote CBD products without consent or authorization. J.A.156 ¶ 38.F. In 2020, Sir David Attenborough learned Meta was using his name, image, and likeness to promote scam CBD products. J.A.157 ¶ 38.F(1). Meta did not have Attenborough's permission, and Attenborough reported this to Meta. *Id.* Like Huckabee, Attenborough was "furious" the ads had tricked his fans into buying the CBD products now wrongly associated with his image. *Id.*; *see also* J.A.151 ¶ 22. Meta's CBD ads also violated skateboarder Tony Hawk's rights in 2020. J.A.157 ¶ 38.F(2).

Meta's actions continued in 2021, this time targeting Dr. Oz and Dr. Phil, and again used a scam CBD product to violate their intellectual property rights. J.A.157-58 ¶ 38.F(3). Dr. Oz and Dr. Phil debunked the scam

19

by appearing on Meta's Facebook multiple times to call it out. *Id.* At this point, after Sir Attenborough had reported the violation to Facebook, J.A.157 ¶ 38.F(1), and after Dr. Oz and Dr. Phil used Facebook to warn their fans, J.A.157-58 ¶ 38.F(3), Meta should have been "aware of facts or circumstances from which a violation" is apparent. Ark. Code Ann. § 4-75-1110(a)(1)(F)(ii).

One month later, Meta targeted the Joyce Meyer Ministries, and like in Huckabee's fake ad, Meta said she was in poor health and stepping down from her position, but that CBD was nursing her back. J.A.158 ¶ 38.F(4). A few months after that, Meta promoted CBD ads unauthorizedly using J.K. Rowling's NIL rights, and Ms. Rowling reported this to Meta. J.A.158-59 ¶ 38.F(5). The same month, Meta used pastor Charles Stanley's name, image, and likeness to promote another CBD ad, and like with Huckabee, this ad used a fake Fox News logo to lend credibility. J.A.159 ¶ 38.F(6); J.A.149 ¶ 16. The next month, for at least the seventh time, Meta posted more CBD ads using Kevin O'Leary's unauthorized name, image, and likeness. J.A.159-60 ¶ 38.F(7). This time, USA Today reported the misuse, giving Meta even more awareness of its violations. *Id.* In August, Meta approved another CBD scam ad, this time targeting Laura Ingraham's name, image, and likeness. J.A.160

¶ 38.F(8). Now, after numerous instances, Meta finally admitted the "ads violate our policies and we have removed them." *Id.* But Meta didn't change. In September, environmentalist David Suzuki was Meta's next target, and he was, again, the victim of Meta's scam CBD ads. J.A.160-61 ¶ 38.F(9). A few days later, Meta did the same to celebrity chef Maggie Beer. J.A.161 ¶ 38.F(10). And in October, minister Dr. James Dobson was the next victim. J.A.161-62 ¶ 38.F(11).

Meta's actions continued in 2022. In January, Dr. Sanjay Gupta was wrongly affiliated with CBD ads through Meta's review, approval, and publishing of another ad without Dr. Gupta's approval. J.A.162 ¶ 38.F(12). USA Today reported it, thus putting Meta on notice again. *Id.* In March, Jeopardy host Mayim Bialik notified Meta of violations of her name, image, and likeness with more CBD ads approved by Meta. J.A.162-63 ¶ 38.F(13).

In 2023, Jennifer Aniston denounced her involvement with CBD after Meta approved and published another false ad violating Aniston's property rights. J.A.163 ¶ 38.F(14). Indeed, Aniston said in her Instagram post (a Meta product) that the posts were illegal and would be prosecuted. *Id.* By the time Meta reviewed and approved the CBD ads violating Huckabee's name,

21

image, and likeness, Meta was on notice of fourteen instances of wrongfully linking celebrities to cannabinoid and violating their reputations and property rights. J.A.163 ¶ 38.G.

The District Court wrote these circumstances off as "a handful of images," J.A.34, but it is much more than that. These statements allege years' worth of "facts or circumstances" where Meta was publishing ads, all involving CBD products as with Huckabee, in violation of other celebrities' NIL rights. Ark. Code Ann. 4-75-1110(a)(1)(F)(ii). Each of the CBD ads featured public figures and celebrities who complained to Meta, yet Meta continued to manually or automatically review and approve the ads, J.A.156 ¶ 38.D.-E., even after admitting the ads violate their policies. J.A.160 ¶ 38.F(8). Given these allegations, the proposed amendment sufficiently alleges a violation of the Broyles Act.

The District Court posits Meta cannot possibly be liable because it is "one of the most dominant social media companies in the world." J.A.34 (quoting J.A.147 ¶ 8). Not only does the District Court use Appellant's language against him, thus depriving him the benefit of reading the complaint in his favor, but the District Court's statement also improperly

weighed the evidence at the pleading stage and deprived the jury of answering an important question—should the world's most powerful social media company finally be held liable for continuously approving CBD ads violating individuals' NIL rights and reputations? *See Bagic v. Univ. of Pittsburgh*, 773 Fed.Appx. 84, 87 (3d Cir. 2019) ("A district court may not 'weigh[] the credibility of the parties' positions on' 'a question of disputed material fact[]' at the motion to dismiss stage, but rather 'should . . . le[ave] such considerations to a jury.'") (alterations in original) (quoting *Anjelino v. New York Times Co.*, 200 F.3d 73, 97 (3d Cir. 1999)).

The District Court's next analysis, J.A.34-35, also failed to read the proposed amendment in Huckabee's favor, and improperly weighed the evidence at the pleading stage. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) ("The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test."). For instance, the District Court says, "Meta would be required, improvidently, to obtain the consent of the owner of every image on Facebook before posting content with that image." J.A.34-35.

23

This reasoning wrongly reads the allegations in Meta's favor and preemptively answers a question ripe for the jury.

First, this analysis ignores Huckabee's allegations that Meta knew it did not have Huckabee's permission to use his NIL rights. J.A.154 ¶ 35. Because Meta knew it did not have permission, approving and posting the ad—which is Meta's own first-party speech—violates the Broyles Act. Ark. Code Ann. § 4-75-1108. Second, it ignores the dozens of other false CBD ads targeting other celebrities and violating their NIL rights. J.A.155-63. Meta was aware of these instances, thus making it "aware of facts or circumstances from which a violation . . . is apparent." Ark. Code Ann. § 4-75-1110(a)(1)(F)(ii).

Meta is not simply "providing a forum in which the content is posted," J.A.34, rather, Meta profits from its advertising. Here, Meta, even after its manual and automated reviews and four years of CBD ads featuring personalities who expressed their displeasure and non-approval of the ads, published these ads in violation of Huckabee's property rights under the Broyles Act. J.A.156 ¶ 38.E. In the end, the question of whether Meta should have to review every ad is a consideration for the jury. *Bagic*, 773 Fed.Appx.

24

at 87. Nonetheless, the District Court's reasoning proves "it can reasonably be conceived that the plaintiffs . . . could, upon a trial, establish a case which would entitle them to . . . relief[,]" *Phillips*, 515 F.3d at 233 (quoting *Twombly*, 550 U.S. at 597 n.8. (citation omitted)), whether or not Meta is the largest advertising company in the world.

## CONCLUSION

For these reasons, Appellant respectfully requests this Court reverse the District Court and rule that Huckabee sufficiently pled his violations of the Broyles Act in Count I of his initial complaint and proposed amended complaint.

DATED: October 14, 2025          Respectfully submitted,

**BELLEW, LLC**

*/s/ Sean J. Bellew*
Sean J. Bellew, Delaware Bar No. 4072
sjbellew@bellewllc.com
2961 Centerville Rd., Ste. 302
Wilmington, DE 19808
(302) 252-4951

**POYNTER LAW GROUP, PLLC**

*/s/ Scott Poynter*
Scott Poynter, Ark Bar 09077*
scott@poynterlawgroup.com
4924 Kavanaugh Blvd.

Little Rock, AR 72207
(501) 812-3943

*Pro hac vice forthcoming*

*Attorneys for Appellant*

## **CERTIFICATE OF BAR MEMBERSHIP**

Pursuant to Third Circuit Local Appellate Rule 28.3(d), the undersigned counsel, Sean Bellew, hereby certifies that I have been admitted before the bar of the United States Court of Appeals for the Third Circuit, and that I am a member in good standing of the Court.

/s/ *Sean J. Bellew*

## CERTIFICATE OF COMPLIANCE

I, Sean Bellew, hereby certify that:

1.     This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because it contains 4,822 words, excluding the parts of the brief exempted by Rule 32(f).

2.     This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Book Aniqua 14-point font.

3.     The hard copy and the electronic copy of this brief are identical.

4.     The electronic copy of the brief has been virus scanned using macOS' internal XProtect and no virus was detected. Counsel to this brief also sent the brief's PDF over Gmail to each other, which automatically scans for viruses on attachments.

DATED: October 14, 2025            /s/ *Sean J. Bellew*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing brief was served on this 14th day of October 2025, upon counsel of record via the Court's ECF filing system.

/s/ *Sean J. Bellew*