**No. 25-2347**

# In the United States Court of Appeals for the Third Circuit

---

MIKE HUCKABEE,
PLAINTIFF-APPELLANT

*v.*

META PLATFORMS, INC.,
DEFENDANT-APPELLEE

---

*ON APPEAL FROM THE UNITED STATES DISTRICT COURT*
*FOR THE DISTRICT OF DELAWARE (CIV. NO. 24-773)*
*(THE HONORABLE GREGORY B. WILLIAMS, J.)*

---

**BRIEF OF APPELLEE**

---

WALTER F. BROWN
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
  *535 Mission Street, 25th Floor*
  *San Francisco, CA 94105*

MATTHEW D. STACHEL
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
  *1313 N. Market Street, Suite 806*
  *Wilmington, DE 19801*

WILLIAM T. MARKS
MATTHEW J. DISLER
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
  *2001 K Street, N.W.*
  *Washington, DC 20006*
  *(202) 223-7314*
  *wmarks@paulweiss.com*

MATTHEW D. KAMINER
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
  *1285 Avenue of the Americas*
  *New York, NY 10019*

## CORPORATE DISCLOSURE STATEMENT

Appellee Meta Platforms, Inc., has no parent corporation, and no publicly held company owns 10% or more of its stock.

# TABLE OF CONTENTS

Page

Introduction ............................................................................................................1

Statement of jurisdiction .......................................................................................3

Statement of the issue ...........................................................................................3

Statement of related cases and proceedings ........................................................3

Statement of the case ............................................................................................3

    A.    Factual background ..............................................................................3

    B.    Procedural history ...............................................................................4

Summary of argument .........................................................................................11

Standard of review ...............................................................................................13

Argument ..............................................................................................................13

    A.    The Broyles Act's exemption for network service providers applies in the absence of actual knowledge or objective obviousness of unauthorized commercial use ..................................14

    B.    The initial complaint lacked plausible allegations of defendant's actual knowledge or obviousness ..........................17

    C.    The proposed amended complaint lacked plausible allegations of defendant's actual knowledge or obviousness ..........................20

    D.    The district court did not require plaintiff to plead falsity or intent to deceive ................................................................................23

Conclusion ............................................................................................................27

# TABLE OF AUTHORITIES

## CASES

*Argueta* v. *ICE*, 643 F.3d 60 (3d Cir. 2011) ........................................................21

*Ashcroft* v. *Iqbal*, 556 U.S. 662 (2009) ...............................................................22

*Barnett* v. *Arkansas Transport Co.*, 800 S.W.2d 429 (Ark. 1990) ....................25

Page

Cases—continued:

*Cureton* v. *NCAA*, 252 F.3d 267 (3d Cir. 2001) ......................................13

*Davis* v. *Wells Fargo*, 824 F.3d 333 (3d Cir. 2016)..............................18

*Doe* v. *Princeton University*, 30 F.4th 335 (3d Cir. 2022) ............................7, 23

*Doe* v. *University of the Sciences*, 961 F.3d 203 (3d Cir. 2020) ........................13

*Fuller* v. *Russell*, 842 S.W.2d 12 (Ark. 1992)....................................17

*Grendell* v. *Kiehl*, 723 S.W.2d 830 (Ark. 1987) .................................25

*Harte-Hanks Communications, Inc.* v. *Connaughton*,
    491 U.S. 657 (1989)........................................................17

*Hope Medical Park Hospital* v. *Varner*,
    568 S.W.3d 818 (Ark. Ct. App. 2019) ...................................16

*Howard Hess Dental Laboratories Inc.* v. *Dentsply International, Inc.*,
    602 F.3d 237 (3d Cir. 2010) ..............................................18

*Howlett* v. *Birkdale Shipping Co., S.A.*, 512 U.S. 92 (1994) ............................16

*Intel Corporation Investment Policy Committee* v. *Sulyma*,
    589 U.S. 178 (2020)....................................................15, 20

*Jackson* v. *Egyptian Navigation Co.*, 364 F.3d 113 (3d Cir. 2004)..................16

*Joel E. Cape, PLC* v. *Cape Law PC*,
    757 F. Supp. 3d 846 (W.D. Ark. 2024) .................................26

*Klotz* v. *Celentano Stadtmauer & Walentowicz LLP*,
    991 F.3d 458 (3d Cir. 2021) ..............................................10

*LabMD Inc.* v. *Boback*, 47 F.4th 164 (3d Cir. 2022).............................8

*Larson Machine, Inc.* v. *Wallace*, 600 S.W.2d 1 (Ark. 1980)............................16

iii

Page

Cases—continued:

*Marcone* v. *Penthouse International Magazine for Men*,
754 F.2d 1072 (3d Cir. 1985) ....................................................................19

*Merck & Co.* v. *Reynolds*, 559 U.S. 633 (2010) .........................................25

*Posters 'N' Things, Ltd.* v. *United States*, 511 U.S. 513 (1994) .........................25

*Roeder* v. *United States*, 432 S.W.3d 627 (Ark. 2014) ................................17

*Secretary of Labor* v. *Kwasny*, 853 F.3d 87 (3d Cir. 2017) ...........................15

*St. Amant* v. *Thompson*, 390 U.S. 727 (1968) ..........................................17

*United States ex rel. Hefner* v. *Hackensack University
Medical Center*, 495 F.3d 103 (3d Cir. 2007) .....................................25

*United States ex rel. Schutte* v. *SuperValu Inc.*, 598 U.S. 739 (2023) ............15

*United States* v. *Hoffert*, 949 F.3d 782 (3d Cir. 2020) ................................24

*Walther* v. *FLIS Enterprises, Inc.*, 540 S.W.3d 264 (Ark. 2018) ....................22

## STATUTES AND RULES

Longshore and Harbor Workers' Compensation Act,
33 U.S.C. §§ 901-950 ..............................................................................16

28 U.S.C. § 1291 .........................................................................................3

28 U.S.C. § 1332(a)(1) .................................................................................3

31 U.S.C. § 3729 .......................................................................................25

47 U.S.C. § 230 ...........................................................................................6

D. Del. LR 15.1 ...........................................................................................8

Fed. R. Civ. P. 59(e) .....................................................................................8

Page

Statutes—continued:

Frank Broyles Publicity Rights Protection Act,
Ark. Code Ann. §§ 4-75-1101 to -1113 ..................................................*passim*

Ark. Code Ann. § 4-75-1103 .................................................................22

Ark. Code Ann. § 4-75-1108 .............................................................5, 13, 15

Ark. Code Ann. § 4-75-1110 ................................................................*passim*

## MISCELLANEOUS

*Black's Law Dictionary* (10th ed. 2014)........................................................16, 24

Uche Ewelukwa Ofodile, *The Frank Broyles Publicity
Rights Protection Act of 2016: Potential Minefields*,
52 Ark. Law. 36 (Spring 2017)..........................................................................26

## INTRODUCTION

Arkansas's Frank Broyles Publicity Rights Protection Act makes it unlawful for any person to use the likeness of another individual for commercial purposes without that individual's consent.  The statute also provides, however, that a network service provider does not violate the Act if the provider both lacked actual knowledge that the individual's likeness was used without authorization, and was not aware of facts or circumstances making unauthorized use apparent.  In this case, plaintiff alleged that the parent company of the social media service Facebook violated the Broyles Act when third parties placed certain advertisements on Facebook using his likeness without his authorization.

Plaintiff does not dispute that defendant qualifies as a covered network service provider under the Broyles Act.  And as the district court correctly held, plaintiff did not allege facts plausibly showing that defendant had knowledge or awareness of the unauthorized use of his likeness.  Aside from threadbare recitations of the statutory elements, plaintiff alleged only that defendant had various systems to review advertisements in place and was aware that third parties had posted advertisements on defendant's network for similar products using the likeness of other public figures without authorization. That was insufficient under a plain reading of the statutory text, as the district court rightly concluded.

On appeal, plaintiff abandons the other claims he alleged below and focuses exclusively on his Broyles Act claim.  As to that claim, plaintiff argues that the district court erred by converting the statutory exemption for network service providers into a scienter requirement that required him to allege that the advertisements in question were false and that defendant acted with intent to deceive.  But the district court did nothing of the sort.  Neither the decision on the motion to dismiss nor the decision on the motion to alter or amend the judgment refers to any falsity or intent requirement in the context of plaintiff's Broyles Act claim.

Instead, the district court used the word "scienter" as a shorthand for the statutory knowledge requirement, finding that "none of [plaintiff's] allegations allow[ed] the [c]ourt to draw the reasonable inference that [defendant] had the requisite scienter, i.e., actual knowledge or awareness of facts or circumstances that could give rise to actual knowledge" that plaintiff's likeness was used on defendant's network without his authorization. J.A. 13.  The court thus both quoted and applied the specific statutory language focused on knowledge or awareness of facts from which unauthorized commercial use was apparent.  And in doing so, the district court correctly held that the allegations in the complaint did not give rise to a plausible inference that defendant knew or had sufficient awareness of facts showing that plaintiff's likeness was used without his authorization.  The district court's judgment should be affirmed.

2

## STATEMENT OF JURISDICTION

On November 18, 2024, the district court entered an order granting defendant's motion to dismiss the complaint with prejudice.  J.A. 3.  On June 24, 2025, the district court entered an order denying plaintiff's motion to alter or amend the judgment.  J.A. 19.  Plaintiff filed a notice of appeal on July 16, 2025.  J.A. 1.  This Court has jurisdiction to review the district court's judgment under 28 U.S.C. § 1291.  The district court had jurisdiction under 28 U.S.C. § 1332(a)(1).

## STATEMENT OF THE ISSUE

Whether the district court correctly dismissed plaintiff's claim under the exemption to Arkansas's Frank Broyles Publicity Rights Protection Act for network service providers that lack knowledge of the unauthorized commercial use of an individual's likeness on their network.  *See* J.A. 12-13, 30-35.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

This case has not been before this Court previously.  Defendant is not aware of any related cases pending before this Court.

## STATEMENT OF THE CASE

### A.    Factual Background

Defendant-appellee Meta Platforms, Inc., is the parent company of Facebook and Instagram, two social media services that together have billions of active users each month.  J.A. 49.  Plaintiff-appellant Mike Huckabee is the

former Governor of Arkansas and the current United States Ambassador to Israel. J.A. 48; *see* J.A. 21 n.1.

As alleged in plaintiff's complaints, third parties can pay defendant to feature advertisements in the news feeds of defendant's users, and advertisers can pay a premium for priority featuring. J.A. 49-50, 147. Defendant collects user data to train algorithms to predict what content, including advertisements, will attract and retain users. J.A. 50, 147. Those algorithms determine which advertisements will feature at the top of users' news feeds. *Id.*

As also alleged in the complaints, unidentified third parties posted three advertisements on Facebook, viewable for fewer than two months in 2024, that used plaintiff's name, image, and likeness (NIL) to promote products containing cannabidiol, more commonly known as CBD. J.A. 50-54, 148-151. In particular, the advertisements claimed that plaintiff had positive experiences using the advertised CBD products and endorsed their use for others. J.A. 50-53, 148-150. After plaintiff learned about the advertisements and alerted defendant about their existence, the advertisements were removed. J.A. 50, 54, 148, 151.

**B.    Procedural History**

1.    In July 2024, plaintiff filed this action against defendant in the District of Delaware. J.A. 43, 48-61. The complaint alleged that defendant "approved and maintained advertisements that unauthorizedly appropriated and

4

unlawfully exploited" the NIL of plaintiff—a "nationally recognized politician and political commentator"—to "sell CBD products." J.A. 50, 57. Plaintiff alleged that he has talked to "numerous fans" who "believed the[] advertisements were true and purchased the CBD products." J.A. 54.

According to plaintiff, defendant "approved and maintained these advertisements with actual malice or, at least, with reckless disregard to their truthfulness or accuracy." J.A. 57. Plaintiff alleged that defendant sells advertisements, uses algorithms to predict which content will be more attractive to users, and "decides which posts appear at the top of users' newsfeed to maximize exposure to certain posts, including advertisements." J.A. 49-50. Plaintiff also alleged that defendant had previously approved, published, and maintained other CBD advertisements that used the likenesses of other public figures without authorization. J.A. 55.

Plaintiff asserted various claims under Arkansas law, but plaintiff has abandoned all of them on appeal except for his claim for a violation of the Broyles Act, Ark. Code Ann. §§ 4-75-1101 to -1113. J.A. 55-57; *see* J.A. 13-17, 57-60; Appellant's Br. 4-5. The Broyles Act creates a private cause of action against any person who "commercially uses the name, voice, signature, photograph, or likeness" of an individual without authorization. Ark. Code Ann. § 4-75-1108. The Act also creates several exemptions from liability. *See id.* § 4-

75-1110.  Under one specified exemption, the use of a person's NIL by a "service provider of a system or network" is "not a violation" if the service provider "[d]oes not have actual knowledge that [the] photograph, voice, or likeness on the system or network is in violation" of the statute, and is not "aware of facts or circumstances from which a violation of [the statute] is apparent."  *Id.* § 4-75-1110(a)(1)(F).  As a remedy for the alleged Broyles Act violation, plaintiff requested declaratory and injunctive relief, disgorgement, and punitive damages.  J.A. 59-60.

2.  Defendant moved to dismiss the complaint based on immunity under Section 230 of the Communications Decency Act, 47 U.S.C. § 230, and for failure to state a claim under Arkansas law.  J.A. 62-89.  The district court held that defendant had not established immunity under Section 230 based solely on the allegations in plaintiff's complaint, but the court determined that plaintiff nevertheless failed to state a claim under Arkansas law.  J.A. 5, 8.

As is relevant here, the district court held that the exemption from liability in the Broyles Act for network service providers applied to defendant on the facts alleged in the complaint.  The district court began by quoting in full the exemption specified above, J.A. 12 (quoting Ark. Code Ann. § 4-75-1110(a)(1)(F)), and described the statutory language as "impos[ing] a scienter requirement," *id.*  The court then concluded that plaintiff failed to plausibly allege either that defendant knew that plaintiff's NIL was used in the third-

6

party advertisements without his authorization, or that defendant had awareness of facts or circumstances making unauthorized use apparent.  J.A. 13.

The district court began by acknowledging that plaintiff had alleged that defendant "approved and maintained the[] advertisements with actual malice or, at least, with reckless disregard to their truthfulness or accuracy."  J.A. 13 (quoting J.A. 57).  The court discounted that allegation, however, because it was a "mere conclusory statement[]" that "recit[ed]" the concept of "scienter," rather than an allegation of "'facts sufficient to draw the reasonable inference that' [defendant] had scienter."  J.A. 13 (quoting *Doe* v. *Princeton University*, 30 F.4th 335, 342 (3d Cir. 2022)).

The district court then addressed plaintiff's allegations that defendant sells advertisements and uses algorithms to share content with users; that plaintiff had national prominence; and that third parties had placed similar advertisements for CBD on Facebook using the NIL of other public figures without authorization.  J.A. 13.  The court determined that none of those allegations gave rise to a "reasonable inference that [defendant] had the requisite scienter, i.e., actual knowledge or awareness of facts or circumstances that could give rise to actual knowledge."  *Id.*  Because the court held that plaintiff failed to plausibly allege defendant's knowledge, it declined to address defendant's additional argument that plaintiff had failed to sufficiently allege that

defendant—as opposed to the third-party advertisers—used plaintiff's name and likeness for its "commercial benefit." J.A. 13, 82-83.

Although plaintiff requested that any dismissal be without prejudice, J.A. 114 n.3, the district court dismissed the complaint with prejudice, J.A. 18 & n.1. As the district court explained, dismissal with prejudice is appropriate where, as in plaintiff's case, there was no "reason to believe that amendment would cure the identified defects" and where the plaintiff "never submitted a draft amended complaint." J.A. 18 n.1 (quoting *LabMD Inc.* v. *Boback*, 47 F.4th 164, 192-193 (3d Cir. 2022)).

3. After the district court issued its decision and entered judgment for defendant, plaintiff sought leave to file an amended complaint by moving to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). J.A. 131-143. As required by this Court's precedent and local rule, *see LabMD*, 47 F.4th at 192; D. Del. LR 15.1, plaintiff attached to his motion a red-lined proposed amended complaint, which included several additional paragraphs of factual allegations, as well as two new claims that plaintiff is no longer pursuing. *See* J.A. 35-41, 144-176; Appellant's Br. 4-5.

In the proposed amended complaint, plaintiff added allegations that defendant has a "comprehensive 'suite' of advertising tools and applications" that would provide defendant "with ample opportunities to detect ads that are

8

fraudulent or that misappropriate information or images that belong to others." J.A. 155. Plaintiff added that defendant "has developed and implemented both automated and manual review systems to determine whether an ad violates its own policy standards" before allowing the advertisement to be posted. J.A. 156. Plaintiff also alleged that, because defendant had those systems in place, defendant "reviewed the [advertisements at issue] for privacy violations, for accuracy, and for authenticity" and chose to publish them "knowing they promoted CBD products falsely endorsed by [plaintiff]." *Id.* Plaintiff further asserted that defendant did not first obtain his consent to use his NIL or otherwise "communicat[e] with him" about the relevant advertisements. J.A. 163-164. Finally, plaintiff described certain alleged instances in which defendant published other CBD advertisements that used the NIL of other public figures without authorization. J.A. 156-163.

4.    The district court denied plaintiff's motion to alter or amend the judgment. J.A. 21. As is relevant here, the court determined that plaintiff's proposed amendments to the complaint would be futile because they would not cure the pleading deficiencies on the Broyles Act claim identified in the court's earlier order. J.A. 31-35.

The district court began by addressing plaintiff's new allegations concerning defendant's "'suite' of advertising tools and applications" and "review systems." J.A. 32-33 (quoting J.A. 155-156). The court concluded that "[n]one

9

of these allegations, whether considered individually, together, or collectively with the other allegations" in the proposed amended complaint, permitted the court "'to draw the reasonable inference' of [defendant's] scienter that the images of [p]laintiff were used without authorization"—that is, "the 'reasonable inference' . . . that [defendant] actually *knew* of the misappropriation." J.A. 33 (quoting *Klotz* v. *Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021)). The court reasoned that plaintiff's allegation that defendant reviewed advertisements for accuracy and had "ample opportunities" to detect misappropriation raised only the "sheer possibility" that defendant "knew" of unauthorized use, which fell "short of the line" required for plaintiff to establish "plausibility of entitlement to relief." J.A. 33 (citation omitted).

The district court then addressed plaintiff's allegations of additional instances in which defendant allegedly published CBD advertisements that used the NIL of other public figures without authorization. J.A. 34, 156-163. As the court explained, even if defendant "ha[d] previously published a handful of images that were used without authorization," those instances would "hardly allow[] for the reasonable inference" that defendant "knew" that plaintiff's NIL was used in the advertisements at issue without his authorization. J.A. 34.

The district court next addressed plaintiff's allegations that defendant did not obtain plaintiff's consent to use his NIL or "communicat[e] with him" about the relevant advertisements. J.A. 163-164. The court reasoned that,

10

although the failure by the third party who "originally created the offending content" to obtain plaintiff's consent might support a reasonable inference that the third party knew that it was misappropriating plaintiff's NIL, the same inference did not follow for defendant, which merely "provid[ed] a forum in which the content [wa]s posted and employ[ed] an algorithm to determine the placement of that content." J.A. 34. Holding otherwise, the court explained, would require defendant, "improvidently, to obtain the consent of the owner of every image on Facebook before posting content with that image." J.A. 34-35.

Finally, the district court determined that plaintiff's remaining allegations—such as the allegation that defendant profited from "engagement" and "collecting data about its users"—were conclusory or "irrelevant, or essentially irrelevant," to defendant's awareness of misappropriation with respect to the advertisements at issue. J.A. 35, 164. The district court thus declined to grant leave to amend the complaint and denied plaintiff's motion to alter or amend the judgment. J.A. 40.

## SUMMARY OF ARGUMENT

The district court did not err in granting defendant's motion to dismiss plaintiff's claim under the Broyles Act or in denying plaintiff's motion to alter or amend the judgment.

11

The district court correctly held that plaintiff did not plead a violation of the Broyles Act because the statutory exemption for network service providers applied to defendant's alleged conduct.  In particular, plaintiff failed to plausibly allege that defendant had actual knowledge of an unauthorized commercial use of his likeness, or that defendant was aware of facts and circumstances making unauthorized use apparent.  In his initial complaint, plaintiff primarily alleged that defendant had approved the advertisements, that it used an algorithm in distributing those advertisements, and that the likenesses of other public figures had previously appeared without authorization in CBD advertisements.  None of those allegations made it plausible that defendant knew that plaintiff's likeness in particular was used without his permission.  Plaintiff's proposed amended complaint did not cure that deficiency; it merely elaborated on factual allegations the district court had already correctly deemed insufficient.

Plaintiff argues that, by using the word "scienter" as a shorthand for the knowledge requirement in the Broyles Act's exemption for network service providers, the district court improperly imposed elements of falsity and intent to deceive that do not exist in the statute.  But the district court's orders themselves belie that argument.  The district court quoted and applied the statutory language when analyzing whether the exemption applied.  The fact that the court used the word "scienter" as a shorthand for the full statutory language

12

is of no moment, as courts regularly use that word to refer generally to similar knowledge requirements, and not merely an element of intent to deceive, manipulate, or defraud. The district court applied the correct standard and reached the correct result.

## STANDARD OF REVIEW

This Court applies plenary review to an order granting a motion to dismiss for failure to state a claim. *See Doe* v. *University of the Sciences*, 961 F.3d 203, 208 (2020). The Court reviews for an abuse of discretion a district court's order denying leave to amend a complaint. *See Cureton* v. *NCAA*, 252 F.3d 267, 272 (2001). The Court likewise reviews for an abuse of discretion an order denying a motion to alter or amend a judgment, except that questions of law resolved in the order are subject to plenary review. *Id.*

## ARGUMENT

The Broyles Act makes it unlawful for any person to "commercially use[]" an individual's NIL if the commercial use was not "authorized" under the Act's procedures. Ark. Code Ann. § 4-75-1108(a). At the same time, the Act provides that no "violation" occurs if an individual's NIL is used by "a service provider of a system or network" where the service provider both lacked "actual knowledge" that the individual's NIL was used on its system or network in violation of the Act, and was not "aware of facts or circumstances" from which a violation was "apparent." *Id.* § 4-75-1110(a)(1)(F).

13

Plaintiff acknowledges (Br. 12) that defendant qualifies as a "service provider of a system or network" under the statute in connection with its ownership of Facebook. The only remaining question is thus whether plaintiff pleaded sufficient facts to plausibly allege that defendant either knew that plaintiff's NIL was used on Facebook without his authorization or was aware of facts and circumstances making such unauthorized use apparent.

The district court correctly held that the answer was no. A network service provider cannot violate the Broyles Act unless it has actual knowledge of the unlawful commercial use of an individual's NIL or the unauthorized use was objectively obvious. Here, neither the initial complaint nor the proposed amended complaint plausibly alleged that defendant had such knowledge. Plaintiff argues that the district court improperly added to the exemption elements of falsity and intent to deceive, but the district court's orders evidence that the court applied the proper standard. The district court correctly dismissed the complaint, and its judgment should be affirmed.

### A. The Broyles Act's Exemption For Network Service Providers Applies In The Absence Of Actual Knowledge Or Objective Obviousness Of Unauthorized Commercial Use

A covered network service provider does not violate the Broyles Act if the provider lacked actual knowledge that an individual's NIL was used on its network without authorization, and such unauthorized use was not objectively obvious.

The Broyles Act's exemption for network service providers states that no "violation" of its provisions occurs when an individual's NIL is used by "a service provider of a system or network" if the service provider both lacks "actual knowledge" that the individual's NIL was used on its network in violation of the Act, and was not "aware of facts or circumstances" from which a violation was "apparent." Ark. Code Ann. § 4-75-1110(a)(1)(F). Across legal contexts, the term "actual knowledge" has a "plain" meaning: "to have 'actual knowledge' of a piece of information, one must in fact be aware of it," and if a person "is not aware of a fact, he does not have 'actual knowledge' of that fact however close at hand the fact might be." *Intel Corporation Investment Policy Committee* v. *Sulyma*, 589 U.S. 178, 184-186 (2020) (citing dictionaries); *see, e.g., United States ex rel. Schutte* v. *SuperValu Inc.*, 598 U.S. 739, 751 (2023). As this Court has explained, "actual knowledge" of a violation of law means "actual knowledge of all material facts necessary to understand" that a violation occurred. *Secretary of Labor* v. *Kwasny*, 853 F.3d 87, 94 (2017) (citation omitted). Because a "violation" of the Act occurs when a specific person's NIL is used for commercial purposes without authorization, Ark. Code Ann. § 4-75-1108(a), a network service provider has "actual knowledge" of a violation only when it was aware that a specific person's NIL was used for commercial purposes on its network without the person's authorization.

15

Even if a network service provider lacks "actual knowledge" of a violation, it can still be liable for the use of an individual's NIL on its network if the provider was "aware of facts or circumstances from which a violation" was "apparent." Ark. Code Ann. § 4-75-1110(a)(1)(F)(ii). "Apparent" means "[v]isible; manifest; [or] obvious." *Black's Law Dictionary* 117 (10th ed. 2014).

Both Arkansas and federal courts consider facts and circumstances to be "apparent" when they are obvious. Under Arkansas law, for example, a person assumes a risk of a "dangerous condition" that was so "obvious" that it was "apparent" to an ordinary person. *Larson Machine, Inc.* v. *Wallace*, 600 S.W.2d 1, 8 (Ark. 1980). Likewise, a property owner does not have a duty to warn an invitee of an "obvious" dangerous condition where the condition and the risk are "apparent to and would be recognized" by a reasonable person. *Hope Medical Park Hospital* v. *Varner*, 568 S.W.3d 818, 823 (Ark. Ct. App. 2019) (citation omitted). Similarly, under the federal Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901-950, the statutory "obviousness limitation" narrows the duty of a vessel to warn of dangers that would be "apparent" to a reasonably competent longshoreman. *Jackson* v. *Egyptian Navigation Co.*, 364 F.3d 113, 117 (3d Cir. 2004) (quoting *Howlett* v. *Birkdale Shipping Co., S.A.*, 512 U.S. 92, 104 (1994)). Consistent with that precedent, a network service provider is "aware of facts or circumstances from which a violation . . . is apparent," for the purposes of the Broyles Act, if the service

16

provider actually knows of facts or circumstances making it obvious that a person's NIL has been used for commercial purposes without authorization.

### B. The Initial Complaint Lacked Plausible Allegations Of Defendant's Actual Knowledge Or Obviousness

Applying the statutory standard, the district court correctly held that plaintiff failed to allege in his initial complaint that defendant knew that plaintiff's NIL was used without authorization or was aware of facts and circumstances making such unauthorized use obvious. J.A. 12-13, 31-32.

In the initial complaint, plaintiff alleged that defendant "approved and maintained the[] advertisements with actual malice or, at least, with reckless disregard to their truthfulness or accuracy." J.A. 57. But that allegation does no more than recite the elements of plaintiff's claim that defendant, as a covered network service provider, had knowledge of the absence of authorization or facts that made such absence obvious. Actual malice refers to a "desire to harm another," *Roeder* v. *United States*, 432 S.W.3d 627, 631 (Ark. 2014), and when raised in a claim alleging falsity, it requires "knowledge that [a statement] was false" or "reckless disregard of whether it was false or not," *Fuller* v. *Russell*, 842 S.W.2d 12, 14 (Ark. 1992) (quoting *St. Amant* v. *Thompson*, 390 U.S. 727, 728 (1968)). "Reckless disregard," in turn, requires a defendant to have a "high degree of awareness" of probable falsity or to have "entertained serious doubts as to the truth." *Harte-Hanks Communications, Inc.* v. *Connaughton*, 491 U.S. 657, 667 (1989) (citation omitted).

17

Plaintiff's principal argument is that the Broyles Act's exemption for network service providers does *not* require proof of falsity or intent to deceive. *See* Br. 1, 5-6, 14-15; pp. 23-26, *infra*. But even if plaintiff's allegations of actual malice or reckless disregard could be read as consistent with the text of the Broyles Act's exemption, those allegations would simply recite the elements of his claim that defendant had either "actual knowledge" of a violation or "aware[ness] of facts or circumstances from which a violation" was "apparent." Ark. Code Ann. § 4-75-1110(a)(1)(F). As the district court correctly recognized (J.A. 13), "legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements" are disregarded in evaluating a complaint on a motion to dismiss. *Davis* v. *Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016). There must instead be "factual allegations" plausibly suggesting knowledge; "it does not suffice to simply say that the defendants had knowledge." *Howard Hess Dental Laboratories Inc.* v. *Dentsply International, Inc.*, 602 F.3d 237, 255 (3d Cir. 2010).

The other allegations in the initial complaint fare no better. Plaintiff alleged that defendant knew he never endorsed CBD (and thus did not consent to the use of his NIL in the advertisements at issue) because he is "a nationally recognized celebrity." Br. 16-17 (citing J.A. 50). But a person's status as a public figure does not mean that other parties will know, or should know, that a particular statement about that person is false. *See Marcone* v. *Penthouse*

18

*International Magazine for Men*, 754 F.2d 1072, 1080 (3d Cir. 1985). Proving the point, plaintiff pleads that "numerous" of his own "fans"—who presumably have greater-than-ordinary knowledge of his life and personality—"believed the[] advertisements were true and purchased the CBD products." J.A. 54. If plaintiff's own fans did not recognize the falsity of the advertisements, it is hard to see how plaintiff can satisfy the Broyles Act's knowledge requirement simply by pleading that he had national prominence.

Plaintiff also argued in support of his initial complaint that defendant "sells advertisements" and "uses [an] algorithm to popularize those advertisements." J.A. 109 (citing J.A. 49-50). But again, plaintiff failed to show how defendant's advertising sales and use of algorithms plausibly suggest knowledge of a specific violation of the Broyles Act. If anything, those allegations relate only to whether plaintiff plausibly alleged commercial use of his likeness under the Act (an issue defendant contested below but that the district court found unnecessary to reach, *see* J.A. 13, 82-83, 126-127, 191-192). The fact that defendant uses algorithms to determine the organization and presentation of advertisements on its service says little about whether defendant knew that a specific person's NIL was used without authorization in the specific advertisements at issue here.

Finally, plaintiff alleged that defendant approved similar advertisements involving other celebrities. J.A. 55. As the district court correctly explained, those allegations also fail to plausibly suggest "actual knowledge or awareness of facts or circumstances that could give rise to actual knowledge" of a Broyles Act violation. J.A. 13. Plaintiff's allegation that *other* advertisements featured the likenesses of *other* public figures does not indicate that defendant was "aware of [the] fact" that *plaintiff's* NIL was used without his consent in a particular advertisement, "however close at hand the fact might be." *Sulyma*, 589 U.S. at 186. Accordingly, plaintiff's mere allegation that defendant approved advertisements containing other individuals' NILs does not render the exemption in the Broyles Act inapplicable.

### C.    The Proposed Amended Complaint Lacked Plausible Allegations Of Defendant's Actual Knowledge Or Obviousness

The district court also correctly held that plaintiff's new allegations in his proposed amended complaint did not cure the failure to allege the requisite knowledge or awareness.

To begin with, plaintiff sought to add allegations that defendant had "automated and manual review systems" and that it had "opportunities" to determine whether an advertisement violated its policy standards. J.A. 155-156. But opportunities to review advertisements, and the development of systems enabling that review, do not show either that defendant actually knew that a

20

specific advertisement used plaintiff's NIL without his authorization or that such unauthorized use was apparent or obvious to a reasonable person.

Plaintiff's proposed amended complaint also expanded on his previous allegations that the likenesses of other celebrities had been used without authorization in other CBD advertisements. *See* J.A. 156-163. But again, as the district court reasoned, an allegation that defendant may have been aware that *other* individuals' likenesses were used without their authorization "hardly allows for the reasonable inference" that defendant knew that an image of *plaintiff* was used without his consent. J.A. 34. In other words, the alleged publication of advertisements containing other individuals' likenesses was "consistent with otherwise lawful behavior" by defendant: namely, the publishing of CBD advertisements without knowledge or awareness of facts making apparent, at the time of publication, that they contained unauthorized commercial uses of plaintiff's NIL. *Argueta* v. *ICE*, 643 F.3d 60, 75 (3d Cir. 2011).

Plaintiff's further allegation that defendant did not affirmatively obtain his consent prior to allowing the third parties to publish the advertisements proves far too much. As the district court observed, if that interpretation of the statute were correct, then a network service provider would be required to obtain authorization for each commercial use of a likeness before posting. J.A. 34-35. For example, defendant would arguably violate the Broyles Act

each time a Facebook user published an image of an Arkansan while "advertising, selling, or soliciting purchases," or "in connection with products, merchandise, goods, or other [non-exempt] commercial activity," Ark. Code Ann. § 4-75-1103(1), without defendant first identifying and seeking that individual's consent.  And requiring network service providers to identify and obtain consent for all such commercial uses would render superfluous the network-service-provider exemption, which states that such service providers do not commit a violation as long as they are not aware of the unauthorized use or of facts making that unauthorized use apparent.  Arkansas law disfavors statutory constructions that render a portion of the statute superfluous.  *See Walther* v. *FLIS Enterprises, Inc.*, 540 S.W.3d 264, 268, 270-271 (Ark. 2018).

Finally, as the district court correctly explained, plaintiff's additional allegations that defendant benefits from user engagement and from collecting user data were "essentially irrelevant" to whether defendant knew of unauthorized use of plaintiff's likeness in specific advertisements.  J.A. 35.  Allegations that defendant might have an incentive to encourage user engagement, but not knowledge of a specific unauthorized use (or of facts making that unauthorized use obvious), "stop[] short of the line" of a "plausible" suggestion that defendant had the requisite knowledge.  *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).  And as the district court also noted, plaintiff's remaining allegations restating the contention that defendant had the requisite state of mind

for liability under the Act were "mere conclusory statement[s]" insufficient to satisfy his pleading burden.  J.A. 13 (quoting *Doe* v. *Princeton University*, 30 F.4th 335, 342 (3d Cir. 2022)).

### D.    The District Court Did Not Require Plaintiff To Plead Falsity Or Intent To Deceive

In the proceedings below, the district court referred to the exemption in the Broyles Act for network service providers as imposing a "scienter" requirement.  J.A. 12, 31.  And after analyzing whether the complaint pleaded the knowledge required to impose liability, the court stated that plaintiff's allegations did not "allow the Court to draw the reasonable inference" that defendant had "the requisite scienter."  J.A. 13.

Based on the district court's use of that shorthand, plaintiff argues that the district court erroneously imported "an element of falsity and intent to deceive" into the statutory exemption. Br. 14.  That argument misunderstands the district court's application of the knowledge requirement for service providers under the Broyles Act, and it misconstrues the district court's use of the term "scienter."

The district court did not require plaintiff to plead falsity or intent to deceive.  Neither the decision on the motion to dismiss nor the decision on the motion to alter or amend the judgment references any falsity or intent requirement in discussing plaintiff's Broyles Act claim.  Rather, in both decisions, the district court quoted the text of the statutory exemption and then applied it by

concluding that plaintiff failed to plausibly allege that defendant had "actual knowledge or awareness of facts or circumstances that could give rise to actual knowledge"—what the court referred to as "scienter." J.A. 13; *see also* J.A. 32-35. The court did not add a new element to the exemption; it simply used the term "scienter" to apply the exemption as written and assess whether plaintiff sufficiently pleaded that defendant "knew that the images of [p]laintiff were used without authorization." J.A. 34.

The district court's use of the shorthand "scienter" to refer to the knowledge element of the Broyles Act exemption is also entirely understandable. "Scienter" means "[a] degree of knowledge that makes a person legally responsible for the consequences of his or her act or omission." *Black's Law Dictionary* 1547 (10th ed. 2014). And courts have long used the word to refer generically to a knowledge standard. For example, this Court has explained that an element of a criminal statute requiring that the defendant "know[] or hav[e] reason to know" a particular fact is a "scienter requirement." *United States* v. *Hoffert*, 949 F.3d 782, 787-788 (2020) (citation omitted). This Court has also used the word "scienter" to refer to the requirement in the False Claims Act that the defendant have "'actual knowledge,' 'deliberate igno-rance,' or 'reckless disregard' of the truth or falsity of information in the de-fendant's claim to the government," even though the False Claims Act does not require "proof of specific intent to defraud." *United States ex rel. Hefner*

24

v. *Hackensack University Medical Center*, 495 F.3d 103, 108-109 (2007) (quoting 31 U.S.C. § 3729(b)(1)); *see also Posters 'N' Things, Ltd.* v. *United States*, 511 U.S. 513, 523-524 & 524 n.13 (1994) (equating a "knowledge standard" with a "scienter requirement"). In Arkansas, courts have similarly used the word "scienter" to mean an element requiring "[k]nowledge or belief on the part of the defendant that [a] representation is false—or, what is regarded as equivalent, that he has not a sufficient basis of information to make it." *Barnett* v. *Arkansas Transport Co.*, 800 S.W.2d 429, 430 (Ark. 1990); *accord Grendell* v. *Kiehl*, 723 S.W.2d 830, 832 (Ark. 1987).

To be sure, the word "scienter" can refer to an intent to deceive, manipulate, or defraud, as in the context of federal securities law. *See, e.g., Merck & Co.* v. *Reynolds*, 559 U.S. 633, 648 (2010). But given the common usage of the word to refer to a knowledge requirement, there is no reason to infer that the district court's mere use of the word "scienter" signals that the court added the elements of falsity and intent to deceive to a statutory provision that says nothing about them. Use of the word "scienter" to refer to the statutory requirement of "actual knowledge" of a violation or "aware[ness] of facts or circumstances from which a violation  .  .  .  is apparent," Ark. Code Ann. § 4-75-1110(a)(1)(F), fits comfortably within common usage.

Plaintiff's citations of a district-court decision and an article discussing the Broyles Act are of no moment. *See* Br. 10-11 (citing Uche Ewelukwa

Ofodile, *The Frank Broyles Publicity Rights Protection Act of 2016: Potential Minefields*, 52 Ark. Law. 36, 37 (Spring 2017)); Br. 11-12 (citing *Joel E. Cape, PLC* v. *Cape Law PC*, 757 F. Supp. 3d 846, 851-853 (W.D. Ark. 2024)). The cited case did not involve a system or network service provider, so the court had no occasion to interpret or apply the state-of-mind requirement in the statutory exemption. 757 F. Supp. 3d at 851-853. And although the cited article correctly notes that "[i]ntent is not an element" of a cause of action under the Broyles Act, *see* Ofodile, *supra*, at 37, the district court here did not impose an intent requirement. It merely concluded that plaintiff had failed to allege facts sufficient to plead that defendant knew that his likeness was used for commercial purposes without his authorization, or that defendant knew of facts and circumstances from which that unauthorized commercial use was apparent.

*    *    *    *    *

In sum, the decisions below were correct. The district court applied the correct statutory standard, and it correctly held that neither the initial complaint nor the proposed amended complaint plausibly pleaded that defendant had the requisite knowledge that plaintiff's NIL was used on Facebook without his authorization. The district court did not err by dismissing the complaint with prejudice and denying the motion to alter or amend the judgment.

# CONCLUSION

The judgment of the district court should be affirmed.

Respectfully submitted,

/s/ William T. Marks

WALTER F. BROWN

PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP
   *535 Mission Street, 25th Floor*
   *San Francisco, CA 94105*

MATTHEW D. STACHEL

PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP
   *1313 N. Market Street, Suite 806*
   *Wilmington, DE 19801*

WILLIAM T. MARKS

MATTHEW J. DISLER

PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP
   *2001 K Street, N.W.*
   *Washington, DC 20006*
   *(202) 223-7314*
   *wmarks@paulweiss.com*

MATTHEW D. KAMINER

PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP
   *1285 Avenue of the Americas*
   *New York, NY 10019*

DECEMBER 15, 2025

27

## CERTIFICATE OF BAR MEMBERSHIP

I, William T. Marks, counsel for appellee Meta Platforms, Inc., hereby certify, pursuant to Local Rules 28.3(d) and 46.1(e), that I am a member in good standing of the Bar of the United States Court of Appeals for the Third Circuit.

/s/ William T. Marks
WILLIAM T. MARKS

DECEMBER 15, 2025

## CERTIFICATE OF COMPLIANCE
## WITH TYPEFACE AND WORD-COUNT LIMITATIONS

I hereby certify that:

1.     This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7) because it contains 6,003 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font.

3.     This brief complies with the electronic filing requirements of Local Rule 31.1(c) because the text of the electronic copy of this brief filed using this Court's CM/ECF system is identical to the text in the paper copies filed with the Clerk, and the electronic copy was scanned for viruses using Symantec Endpoint Protection and no viruses were detected.

/s/ William T. Marks
WILLIAM T. MARKS

## CERTIFICATE OF SERVICE

I, William T. Marks, counsel for appellee Meta Platforms, Inc., and a member of the Bar of this Court, hereby certify that, on December 15, 2025, an electronic copy of this brief was filed with the Clerk of Court using the CM/ECF System. I further certify that all parties required to be served have been served.

/s/ William T. Marks

WILLIAM T. MARKS